**In re CHATEAUGAY CORPORATION, Reomar, Inc., the LTV Corporation, et al., Debtors.**

**In re LTV STEEL COMPANY, INC., Debtor.**

**BLUE CROSS OF WESTERN PENNSYLVANIA, Appellant,**

v.

**LTV STEEL COMPANY, INC., Appellee.**

No. 87 Civ. 4093 (KTD).

United States District Court, S.D. New York.

Feb. 29, 1988.

---

Springer, Bush & Perry, Pittsburgh, Pa., for appellant Blue Cross of Western Pennsylvania; Joseph Friedman, and Gerri L. Sperling, of counsel.

Strook & Strook & Lavan, New York City, for Official Committee of Unsecured Creditors; Mark A. Speiser, of counsel.

Booth, Marcus & Pierce, New York City, for Equity Security Holders; Peter D. Wolfson, of counsel.

Levin & Weintraub & Crames, Michael J. Crames, and Marc Abrams, of counsel and Davis Polk & Wardwell, Karen E. Wagner, of counsel, New York City, for the debtors and debtors in possession.

Harold Jones, Office of the Trustee, and Cohen, Weiss & Simon, New York City, for United Steel Workers; Bruce A. Simon, of counsel.

Baker & Hostetler, Cleveland, Ohio, for BCBSMNO; Susan Collins, of counsel.

Kramer, Levin, Nessen, Kamin & Frankel, New York City, for LTV Banks; Peter V. Pantaleo, of counsel.

Mark D. Katz, Cleveland, Ohio, for LTV Steel Co., Inc.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

Appellant Blue Cross of Western Pennsylvania ("BCWP") here appeals from a decision of the Bankruptcy Court, (Lifland, B.J.), denying its request for relief from the automatic stay entered in the bankruptcy of LTV Steel Company, Inc. ("LTV Steel"), the debtor in possession. For the reasons set forth below, the Order appealed from is affirmed.

### FACTS

LTV Steel is an amalgam of formerly independent steel companies including, among others, Jones & Laughlin Steel Corporation ("J & L") and Republic Steel Corporation ("Republic"). On July 17, 1986, LTV Steel filed a Petition for Reorganization under Chapter 11 of the United States Bankruptcy Code. LTV Steel has continued since that filing to operate its business as a debtor in possession under the Bankruptcy Code.

BCWP is a Pennsylvania corporation that provides health care benefits to its subscribers. Since 1981, BCWP has provided benefits to J & L employees and retirees in exchange for monthly premium payments. This arrangement continued after J & L merged into what is now LTV Steel ("LTV/J & L"). Pursuant to this contract, BCWP prepares an annual settlement at the end of each calendar year to reconcile the amount of tentative premiums BCWP received and the amount of health care claims paid by BCWP on behalf of LTV/J & L subscribers. If the aggregate amount of claims paid is less than the aggregate amount of premiums received, BCWP refunds the excess premiums to LTV Steel. If the aggregate amount of claims paid is greater than the aggregate amount of premiums received, LTV/J & L must pay the greater amount to BCWP.

Blue Cross and Blue Shield Mutual of Northern Ohio ("BCBSMNO") is an Ohio corporation that provides health care bene-

**42**

fits to its subscribers. Since 1982, BCBSMNO has provided health care benefits to employees and retirees of Republic in exchange for monthly premium payments. Like BCWP's coverage provided to J & L employees and retirees, this arrangement continued after Republic merged into LTV Steel.

This matter arises out of contractual relationships between BCWP, BCBSMNO, and the steel companies in a national syndication arrangement. In such an arrangement, one health benefits corporation acts as a control plan and contracts with other health benefits plans to pay subscriber's claims that arise outside of the original health plan's area of service. The control plan collects premiums from subscribers, administers the syndication, and reimburses the nationwide participating health plans for subscriber's claims they pay and for their administrative expenses. Each participating plan shares in the underwriting risk of the arrangement.[1] In this case, BCWP acted as a control plan for a national syndication arrangement for J & L subscribers. BCBSMNO also acted as a control plan for a national syndication arrangement for Republic subscribers, under which BCWP was a participating plan.

For the calendar year 1985, LTV/J & L's tentative premiums paid exceeded the BCWP claims and administrative expenses by $2,880,000. Under its contract, LTV/J & L is then entitled to a refund from BCWP of that amount. However, as a participating plan in BCBSMNO's LTV/Republic syndication, BCWP paid claims and incurred administrative expenses that it asserts exceed $3,000,000, and for which it has received no reimbursement from BCBSMNO. BCBSMNO has advised BCWP that LTV/Republic has not paid BCBSMNO for these claims.

BCWP now claims that it is entitled to a set off, pursuant to the Bankruptcy Code, 11 U.S.C. § 553(a) (1982 & Supp. IV 1987), of the monies due to it from BCBSMNO against monies that it (BCWP) owes to LTV/J & L. The Bankruptcy Court re-

fused to permit the relief sought and held that no mutuality, so as to permit the proposed set off, existed between BCWP and the debtor (LTV Steel). • BCWP, however, maintains that there is mutuality, arguing that it is a third-party beneficiary of the contract between the debtor (LTV/Republic) and BCBSMNO, and also under equitable principles.

BCWP was not a third-party beneficiary of the contract between LTV/Republic and BCBSMNO. The beneficiaries of that contract were solely the employees and the retirees of LTV/Republic. BCBSMNO could have supplied the coverage to the employees in Western Pennsylvania either by having the hospitals and benefit providers there bill it (BCBSMNO) directly, or by getting some other insurance company, such as one of the major mutual companies, to provide those benefits. LTV/Republic had little interest in how the arrangement was accomplished.

In effect, BCWP seeks to run ahead of all other participating plans in connection with BCBSMNO's claim solely because it finds itself in possession of monies owed to the debtor. In so doing, it would have this court prefer it to all others in the class of participating plans. This in itself would have an inequitable result. Doing equity means treating all participating plans under the BCBSMNO contract equally.

The order appealed from is affirmed.

SO ORDERED.

**1.** The only real "risk" underwritten by the participating companies is the possibility that an employer may go bankrupt such as in the instant case.