In re SENTINEL PRODUCTS CORPO-RATION, PI, Inc., Packaging Industries Group, Inc., et al., Debtors.

**PACKAGING INDUSTRIES GROUP, INC., Plaintiff/Appellee,**

v.

**DENNISON MANUFACTURING CO., INC., Defendant/Appellant.**

Civil Action No. 94–CV–598 (RSP).

United States District Court, N.D. New York.

Jan. 30, 1996.

Hanify & King, P.C., Boston, MA (David Lee Evans, Charles A. Dale III, of counsel), for Appellant, Dennison Manufacturing Co., Inc.

Wynn & Wynn, Providence, RI (Daniel J. Vieira, of counsel), for Appellee, Packaging Industries Group, Inc.

## MEMORANDUM–DECISION AND ORDER

POOLER, District Judge.

## INTRODUCTION

Dennison Manufacturing Co., Inc. ("Dennison") appeals from the March 21, 1994, Mem- orandum–Decision and Order of the United States Bankruptcy Court for the Northern District of New York (Mahoney, J.) granting summary judgment to Packaging Industries Group, Inc. ("Packaging") and dismissing Dennison's cross-motion for summary judg- ment. Because it held that Dennison im- properly set off debts between the parties, the bankruptcy court entered judgment against Dennison in the amount of $118,907 plus interest.

## BACKGROUND

This litigation concerns the treatment of obligations between a seller, Packaging, and buyer, Dennison, that accrued prior to Pack- aging's Chapter 11 bankruptcy filing. The first debt stems from a patent infringement lawsuit that a third party, Refac Internation- al, Ltd., brought against Dennison in Sep- tember 1987 in the United States District Court for the District of New Jersey. The lawsuit involved products Dennison bought from a Packaging affiliate, Sentinel Products Corp. ("Sentinel"). In a letter dated March 30, 1988, Dennison notified Packaging about the infringement suit, demanded indemnifica- tion, and invited Packaging to defend the action pursuant to the Uniform Commercial Code.[1] In another letter dated May 27, 1988, Dennison demanded indemnification from Packaging and invited Packaging to take over the litigation. Although Packaging sup- plied Dennison with technical information re- garding the allegedly infringing products, Packaging never formally entered the law- suit. In November 1988, Dennison settled the patent infringement suit at a total cost of $111,596, which included $31,596 for Denni- son's attorney fees.

The second debt between the parties con- cerns the sale of products by Packaging to Dennison. In April 1988, Dennison owed Packaging a balance of $118,907. Packaging filed a voluntary petition for reorganization under Chapter 11 on May 25, 1988, when ten affiliated Packaging entities simultaneously filed ten petitions. Based on the record be- low, Dennison did not participate in the bankruptcy proceedings.

---

1. Dennison's standard purchase order form also contained defense and indemnity clauses.

On February 22, 1989, Dennison sent a letter to Packaging in which Dennison set off the $118,907 it owed Packaging against the $111,596 Dennison spent defending and settling the patent infringement action. In making this setoff, Dennison relied on the Uniform Commercial Code and the indemnity clause in its purchase order form. Dennison sent Packaging a $7,311 check to cover the balance it owed Packaging, and Packaging deposited the check.

Packaging emerged from bankruptcy on April 18, 1991, when the bankruptcy court approved the Debtors' First Amended Consolidated Plan of Reorganization (the "consolidated plan"). On October 11, 1991, Packaging sued Dennison to recover $118,907. In its complaint, Packaging alleged that Dennison's setoff was wrongful, violated the automatic stay provision of the bankruptcy code,[2] and breached the parties' sales contract. Dennison's answer in December 1991 asserted various affirmative defenses and three counterclaims concerning Packaging's failure to defend and indemnify Dennison in the patent infringement lawsuit.

Both parties subsequently moved for summary judgment. On March 21, 1994, the bankruptcy court dismissed Dennison's motion and granted Packaging's motion on the grounds that Dennison was not entitled to set off its infringement litigation defense costs against the outstanding balance of its account with Packaging.[3] For the purposes of its decision, the bankruptcy court resolved in Dennison's favor alleged factual disputes concerning Packaging's duty to defend and indemnify Dennison and the amount of the infringement litigation costs attributable to Packaging's products. The court then held that Dennison was not entitled to setoff as a matter of law because the two debts lacked mutuality. In other words, the setoff was improper because Dennison owed money to Packaging, but the patent infringement law-

suit concerned a separate Packaging affiliate, Sentinel. The court also held that "equitable considerations join the legal shortcomings in denying Dennison's claim of setoff" because Dennison's singular action in taking the setoff while Packaging was in Chapter 11 proceedings disregarded the role of the bankruptcy court. Bankr.Op. at 11. Dennison now appeals. Oral argument took place on October 17, 1994.

## DISCUSSION

### I. Standard of Review

■ The district court has jurisdiction to review final orders of the bankruptcy courts. 28 U.S.C. § 158(a). In conducting this review, however, I may not set aside the bankruptcy court's findings of fact unless they are clearly erroneous. Bankr.R. 8013. On a summary judgment appeal, I may consider the legal conclusions of the bankruptcy court de novo. *In re Operation Open City, Inc.*, 170 B.R. 818, 821 (S.D.N.Y.1994).

■ Because this appeal concerns cross-motions for summary judgment, I apply familiar analysis.[4] Summary judgment shall enter if, when viewing the evidence in the light most favorable to the nonmovant, the court determines that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456, 112 S.Ct. 2072, 2076–2077, 119 L.Ed.2d 265 (1992). A party seeking summary judgment must demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–2553, 91 L.Ed.2d 265 (1986). If the movant satisfies this initial burden, then the burden shifts to the nonmovant to proffer evidence demonstrating that a trial is required because a disputed issue of fact exists. *Weg v. Macchiarola*, 995 F.2d 15, 18 (2d

---

**2.** *See* 11 U.S.C. § 362(a)(7).

**3.** The bankruptcy court also held that Dennison's right to setoff survived confirmation of Packaging's consolidated plan even though Dennison failed to seek prior court approval of the setoff. The court found that Dennison may not have had proper notice of confirmation hearings and thus

may have lacked an opportunity to present its setoff claim to the bankruptcy court. This issue is not on appeal.

**4.** Federal Rule of Bankruptcy Procedure 7056 incorporates Federal Rule of Civil Procedure 56. Bankr.R. 7056.

Cir.1993). The nonmovant must do more than present evidence that is merely colorable, conclusory, or speculative and must present "concrete evidence from which a reasonable juror could return a verdict in his favor...." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The nonmovant must do more than show "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

As a preliminary matter, Dennison argues that the bankruptcy court erroneously granted summary judgment because the court specifically identified an issue of material fact. Contrary to Dennison's contention, the bankruptcy court did not find a factual dispute regarding whether Dennison actually effected a setoff. The clear language of the opinion below shows that there was a dispute over *when* the setoff occurred because the parties failed to present accounting records as evidence of an actual setoff. Bankr.Op. at 5 & n. 1. Nevertheless, it is irrelevant whether Dennison in its February 1989 letter to Packaging took a setoff or—as Dennison claims—merely preserved its right to the setoff. In either event, the legal issue is the same, that is, whether Dennison now should pay Packaging $118,907. I therefore reject Dennison's argument that summary judgment was improper on these grounds.

## II. Mutuality

██ The bankruptcy court held that Packaging was entitled to summary judgment as a matter of law because under no circumstances could Dennison offset its debt to Packaging against money owed to Dennison by Sentinel. The court held that because Packaging and Sentinel are "separate and distinct legal entit[ies]," the element of mutuality required for setoff under Section 553 of the bankruptcy code was absent. Bankr.Op.

at 10. On appeal, Dennison contends that mutuality does exist because by the terms of the consolidated plan Packaging and all of its affiliated entities, including Sentinel, are treated as one.

██ Section 553(a) of the bankruptcy code preserves a creditor's right to set off a "mutual debt" between the debtor and creditor as long as both debts "arose before the commencement of the [bankruptcy] case." 11 U.S.C. § 553(a).[5] This section of the bankruptcy code does not create an independent right but rather preserves for the creditor's benefit any setoff right that it may have under applicable nonbankruptcy law.[6] *In re Westchester Structures, Inc.* 181 B.R. 730, 738–739 (Bankr.S.D.N.Y.1995); *see also Darr v. Muratore*, 8 F.3d 854, 860 (1st Cir.1993). Section 553 also imposes additional restrictions on a creditor seeking setoff. *Darr*, 8 F.3d at 860. The additional restrictions, of course, are that the offset debts must be mutual, prepetition debts. *Westchester*, 181 B.R. at 739. Importantly, the decision to allow setoff rests in the sound discretion of the bankruptcy court. *In re Public Serv. Co. of New Hampshire*, 884 F.2d 11, 16 n. 2 (1st Cir.1989) (citing *Internal Revenue Serv. v. Norton*, 717 F.2d 767, 772 (3d Cir.1983)); *Bohack Corp. v. Borden, Inc.*, 599 F.2d 1160, 1165 (2d Cir.1979).

██ There is no dispute that the debts between Dennison and Packaging existed prior to Packaging's Chapter 11 filing. However, the parties contest the mutuality of the debts. Most generally, mutual debts are "due to and from the same person in the same capacity." *Modern Settings, Inc. v. Prudential–Bache Sec., Inc.*, 936 F.2d 640, 648 (2d Cir.1991) (quoting *Beecher v. Vogt Mfg. Co.*, 227 N.Y. 468, 473, 125 N.E. 831 (1920)); *see also WJM, Inc. v. Massachusetts Dep't of Pub. Welfare*, 840 F.2d 996, 1011–12 (1st Cir.1988). Even though the parties must owe offsetting debts to each other in

---

5. The statute states in relevant part—
 "Except as otherwise provided in this section ..., this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that

arose before the commencement of the case...." 11 U.S.C. § 553(a).

6. Both Dennison and Packaging agree that Massachusetts law is the appropriate nonbankruptcy law to be applied to Dennison's setoff claim.

the same relationships, the debts need not arise from the same or similar transactions. *In re Ross–Viking Merchandise Corp.*, 151 B.R. 71, 73–74 (Bankr.S.D.N.Y.1993); *see also Browner v. Rosen*, 56 B.R. 214, 217 (Bankr.D.Mass.1985).

▮ Mutuality is strictly construed against the party seeking setoff. *Westchester*, 181 B.R. at 739. For example, no mutuality exists where one debt existed prior to the bankruptcy filing and the other debt is a postpetition obligation. *Browner*, 56 B.R. at 217. Additionally, no mutuality exists where one party has a fiduciary duty or trust relationship with the other, and the other side's claim is a simple unsecured debt. *Ross–Viking*, 151 B.R. at 74. Finally, a subsidiary's debt may not be set off against the credit of a parent or other subsidiary, or vice versa, because no mutuality exists under the circumstances. *MNC Commercial Corp. v. Joseph T. Ryerson & Son, Inc.*, 882 F.2d 615, 618 n. 2 (2d Cir.1989); *see also In the Matter of Elcona Homes Corp.*, 863 F.2d 483, 486–87 (7th Cir.1988); *Depositors Trust Co. of Augusta v. Frati Enters.*, 590 F.2d 377, 379 (1st Cir.1979).

▮ In the decision below, the bankruptcy court disallowed setoff because Sentinel and Packaging were not the same legal entity. The court held that mutual debt did not exist where Dennison owed payment to Packaging while Sentinel had an indemnity obligation to Dennison. On appeal, Dennison argues that mutuality exists among the debts of Packaging, Sentinel and Dennison because Packaging's consolidated plan specifically linked Packaging and Sentinel for setoff purposes.[7]

The bankruptcy court approved the consolidated plan on April 18, 1991, before Packaging brought its lawsuit against Dennison. Dennison now relies on Section 6.1 of the plan, which states in relevant part:

Substantive Consolidation. Except as expressly provided in the Plan, the Debtors[8] shall continue to maintain their separate corporate existences for all purposes other than the treatment of Claims under the Plan. Pursuant to the Substantive Consolidation Order and except as provided in the ST Settlement, on the Confirmation Date: ... (vii) for purposes of determining the availability of the right of Set–Off under Section 553 of the Code, the Debtors shall be treated as one entity so that, subject to the other provisions of Section 553 of the Code, debts due to any of the Debtors may be set off against the debts of any of the Debtors."

Contrary to Dennison's assertion, this clause does not require that Sentinel and Packaging be treated as one entity with respect to Dennison's setoff claim. Rather, the plain language of the clause states that the ten affiliated Packaging entities are to be treated *separately* "for all purposes other than treatment of Claims under the Plan."

The consolidated plan does not define the phrase "Claims under the Plan." However, its definitions of the terms "Allowed Claim," "Claim," and "Disallowed Claim" all presuppose that the creditor has participated in the bankruptcy proceedings and filed a proof of claim. The consolidated plan's definition of "Claim," for example, is identical to that contained in the bankruptcy code. 11 U.S.C. § 101(5). Claim is defined broadly to permit the highest possible relief in the bankruptcy court, but this relief of course must occur through the claimants' participation in bankruptcy proceedings, including those matters relating to confirmation. *In re Chateaugay Corp.*, 87 B.R. 779, 794–95 (S.D.N.Y.1988). There is absolutely no dispute that Dennison failed to participate in the bankruptcy proceedings by filing a proof of claim pursuant to 11 U.S.C. § 501(a). In fact, in a portion of the decision not on appeal, the bankruptcy court specifically ruled that it would consider

7. Packaging argues that the terms of the consolidated plan cannot be considered for the first time on appeal. However, the bankruptcy court implicitly considered the plan as a "matter[] of public record in the main case germane to the issues pending before the court." Bankr.Op. at 2.

8. The consolidated plan defines "Debtors" to include Packaging Industries Group, Inc. and each of its nine affiliates, including Sentinel. Consolidated Plan § 1.32.

the merits of Dennison's setoff claim even though Dennison did not participate in pre-confirmation bankruptcy hearings. Bankr. Op. at 8–9. Consequently, because Dennison's setoff claim is not a claim under the plan, Dennison cannot receive the benefit of substantive consolidation articulated in Section 6.1 of the consolidated plan. Dennison's setoff claim must be considered outside the context of the consolidated plan, and in that context the debtors "continue to maintain their separate corporate existences." Consolidated Plan § 6.1.

Dennison also argues that Packaging admitted the existence of mutuality in its pleadings before the bankruptcy court and that Packaging should be estopped from arguing otherwise. However, in none of the pleadings to which Dennison refers does Packaging fail to characterize Sentinel as an affiliate or separate division. *See, e.g.,* Disclosure Statement Regarding Debtors' First Amended Consolidated Plan of Reorganization, of 3/18/91, at 6. Other than its agreement to Section 6.1 of the consolidated plan, Packaging never conceded that it and its nine affiliates were one entity. I therefore reject Dennison's equitable estoppel argument.

 Consequently, the bankruptcy court did not abuse its discretion in finding that no mutual debt existed between Packaging and Dennison. It is a matter of well settled law in both New York and Massachusetts that debts involving parent and subsidiary business entities are not mutual for Section 553 setoff purposes. Although setoff may be favored in the Second Circuit, there is no indication that the bankruptcy court made its decision "cavalierly" or without due consideration. *See Bohack,* 599 F.2d at 1165. Dennison's reliance on Section 6.1 of the consolidated plan is misplaced because Dennison's setoff claim is not a claim under the plan. Additionally, Packaging never conceded mutuality. Because the bankruptcy court reached the correct legal decision under Section 553, I do not consider whether the court's consideration of the equities was erro-

neous.[9] The bankruptcy court properly determined that even if all factual disputes were resolved in Dennison's favor, Dennison's setoff was improper as a matter of law because it did not concern mutual debt. Summary judgment in favor of Packaging thus was appropriate. However, I hereby reduce the judgment against Dennison by $7,311 because there is no dispute that Dennison paid this amount to Packaging in February 1989 in partial satisfaction of its outstanding debt to Packaging. The decision of the bankruptcy court is affirmed as modified.

## CONCLUSION

Because the bankruptcy court properly determined that the debts Dennison set off lacked mutuality, the decision of the bankruptcy court is affirmed as modified. The judgment against Dennison shall be in the amount of $111,596 in order to credit the $7,311 that Dennison previously paid Packaging.

IT IS SO ORDERED.

---

9. The parties agree that under Massachusetts law, equitable considerations are relevant to setoff decisions. However, I need not consider this issue because Dennison failed to meet the additional requirements that Section 553 superimposes on state law, namely that the prepetition debts are mutual.